**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **DAKOTA OLIPHANT, on behalf of himself and others similarly situated,** | ) ) ) | **8:18-CV-00353-JMG-MDN** |
| **Plaintiff** | ) ) | |
| **vs.** | ) ) ) | **JOINT MOTION FOR APPROVAL OF** |
| **SPRINT CORPORATION, a Kansas Corporation and SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation,** | ) ) ) ) ) | **SETTLEMENT, DISMISSAL OF CLAIMS WITH PREJUDICE, AND ENTRY OF JUDGMENT** |
| **Defendants.** | ) ) | |

## I.    INTRODUCTION

With this Motion, Named Plaintiff Dakota Oliphant ("Named Plaintiff") and Defendants Sprint Corporation and Sprint/United Management Company (collectively, "Defendants") jointly seek approval of the settlement terms reached between Named Plaintiff and Defendants which are memorialized in the settlement agreement submitted with this Motion (the "Settlement Agreement"), and approval of the settlement distribution process outlined in the Settlement Agreement.

In the underlying action, Named Plaintiff alleges that Defendants maintained a policy and practice of requiring hourly, non-exempt employees in its retail locations in Nebraska, Iowa and Minnesota to work off-the-clock resulting in underpayment of overtime and minimum wage compensation in violation of the federal Fair Labor Standards Act ("FLSA"). Named Plaintiff further alleges that Defendants maintained a policy and practice of shaving hourly, non-exempt employees' time records in its retail locations in this same geography in order to avoid payment of overtime wages.

The parties have reached a settlement after litigating this matter for well over two years. The parties engaged in a contested motion for conditional certification, voluminous exchange of written discovery and document productions, meetings and conferences regarding that discovery, and protracted settlement discussions culminating in a mediation with a mediator with extensive wage and hour experience in order to reach this settlement.

The Settlement includes a cash payment of Fifty Thousand Dollars ($50,000.00) to be distributed to Named Plaintiff and the 70 additional individuals who have filed consent to participate in this litigation as party plaintiffs (collectively, "Plaintiffs"). The parties seek approval of a $5,000 service award from this fund for Named Plaintiff in recognition of his service to the class. The remaining $45,000 will be distributed pro rata amongst Plaintiffs. In exchange for their pro rata portion of the settlement fund, Plaintiffs will release all federal wage and hour claims. The settlement terms represent a fair and reasonable compromise of Plaintiffs' FLSA claims for unpaid overtime and minimum wages.

## II.     PROCEDURAL HISTORY

### A.     Named Plaintiff's Complaint and Defendant's Answer and Defenses

On July 24, 2018, Named Plaintiff filed his Collective Action Complaint alleging that Defendants violated the overtime and minimum wage provisions of the FLSA on his own behalf and on behalf of all "similarly situated" employees pursuant to Section 216(b) of the FLSA. *See* ECF. No 1. Named Plaintiff specifically alleges that Defendants

> failed to properly pay the Plaintiff and other similarly situated overtime pay for work performed in excess of forty hours per week and their full compensation for hours worked. Instead, and as policy/practice, Sprint would routinely require Plaintiff and other similarly situated to report forty hours per work week on its time keeping systems, or Sprint would simply report these hours on their behalf in the same system and would routinely under report hours actually worked.

*Id.*, ¶ 22.  In his Complaint, Named Plaintiff proposed a FLSA collective defined as "[a]ll persons who worked as an Operations Specialist as hourly employees (or persons with similar job duties) for Sprint within three years prior to the filing of the Complaint." *Id.*, ¶ 30.  Named Plaintiff sought the alleged unpaid back wages and an equal amount in liquidated damages and attorneys' fees and costs on behalf of himself and the Opt-In Plaintiffs pursuant to the FLSA.  *Id.*, p. 8.

On August 20, 2018, Defendants filed their Answer to Named Plaintiff's Complaint and denied Named Plaintiff's allegations.  *See* ECF No. 7.  Among other defenses, Defendants asserted that Named Plaintiff had been appropriately compensated for all hours worked, Named Plaintiff was not an appropriate collective representative because he had only worked in one retail location for a short period of time and his employment was terminated for falsifying time records, Named Plaintiff's claims were not appropriate for collective treatment pursuant to Section 216(b) of the FLSA, Defendants acted in good faith and with a reasonable belief that their actions were in compliance with the FLSA and any alleged violations of the FLSA were not willful.  *Id.*, pp. 7-10.

B.    **Named Plaintiff's Contested Motion for Conditional Certification.**

On September 21, 2018, Named Plaintiff filed a Motion for Conditional Class Certification and a Motion for Expedited Motion to Produce and Approval of Notice (collectively, the "Conditional Certification Motion").  *See* ECF Nos. 23-26.  Defendants filed their memorandum opposing the Conditional Certification Motion on October 25, 2018.  *See* ECF Nos. 33-34.  Named Plaintiff filed his reply memorandum in support of the Conditional Certification Motion on November 12, 2018.  *See* ECF. No. 37.  Defendants filed a motion for leave to file a sur-reply memorandum to Named Plaintiff's Conditional Certification on November 20, 2018, which the Court granted on November 26, 2018.  *See* ECF Nos. 38-39.

Named Plaintiff responded to Defendants' sur-reply memorandum on November 26, 2018, seeking to have Defendants' memorandum stricken from the record. *See* ECF Nos. 40-41. The Court denied Named Plaintiff's motion to strike on December 12, 2018. *See* ECF No. 42.

### C.    Conditional Certification Is Granted And Notice Issues to The Putative Collective

On April 26, 2019, Magistrate Judge Nelson issued Findings and Recommendations recommending that the Court grant, in part, Named Plaintiff's Conditional Certification Motion and that notice issue to "[a]ll persons who worked as an Operations Specialist, or other hourly employees with similar job duties, who were or are now employed by Sprint in Nebraska, Iowa or Minnesota from three years from the date of the Court's order on this matter." *See* ECF No. 45. The Magistrate further approved Named Plaintiff's proposed notice, with the revised collection action definition described above, to be mailed to all individuals who met that definition. *See id.* The Court adopted Magistrate Judge Nelson findings and recommendations on May 13, 2019. *See* ECF No. 46.

The Court approved notice issued to 869 individuals. That notice informed recipients:

If you choose to join in this case you will become a plaintiff class member and you will be bound by any judgment, whether it is favorable or unfavorable.

If you sign and return the "Consent to Become a Party Plaintiff form and are joined in the case, you are agreeing to designate Plaintiff Oliphant as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs attorneys concerning attorney's fees and costs, and all other matters pertaining to this lawsuit. These decisions made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

. . .

This Notice is for the sole purpose of determining the identity of those persons who may be entitled to and wish to participate in this case and any potential judgment or settlement.

*See* ECF 26-3. The notice further explained that individuals who joined the lawsuit as a party plaintiff by returning a consent form would be represented by Plaintiffs' counsel.

During this period, Plaintiffs' Counsel expended significant resources and time tracking down current addresses of many of the putative collective members. Declaration of Matthew Dunning ("Dunning Dec."), ¶ 10.

Seventy-five individuals, in addition to Named Plaintiff, filed written consents to join this lawsuit as party-plaintiffs. *See* ECF Nos. 36, 54-56, 59, 60, 63-78, 89, 93. Two of these individuals were later dismissed from the lawsuit because they were inadvertently included on the class list. *See* ECF Nos. 61 and 62. Three of these individuals subsequently withdrew their consent to participate, leaving a total of seventy Opt-In Plaintiffs who will participate in the Settlement, if approved by the Court. *See* ECF Nos. 97, 110, 113.

**D.  The Parties Engaged in Extensive Written Discovery and Document Productions.**

The parties have engaged in extensive written discovery and document productions. Defendants responded to two sets of requests for production of documents and produced over 5,000 pages of documents, which included excel reports of each Plaintiffs' time records, compensation records, time clock acknowledgment records and time edit records. Declaration of John Lassetter ("Lassetter Dec."), ¶ 2; Dunning Dec. ¶ 11.

Defendants served interrogatories and document requests on Named Plaintiff and 20 other representative plaintiffs identified by the parties. Lassetter Dec. ¶ 3; Dunning Dec. ¶ 12. 15 of those individuals responded to this written discovery. Lassetter Dec. ¶ 3; Dunning Dec. ¶ 12. Plaintiffs' Counsel made extensive efforts to communicate with the representative plaintiffs in order to obtain and compile information responsive to the Defendants' discovery. Dunning Dec. ¶ 12.

**E.     The Parties Engaged in Extensive Arms' Length Settlement Negotiations Culminating In A Full Day In-Person Mediation.**

The parties engaged in extensive arms' length settlement discussions, culminating in full day mediation with experienced wage and hour mediator, John Phillips, on October 1, 2020 in Kansas City, Missouri.  Lassetter Dec. ¶¶ 6-8; Dunning Dec. ¶¶ 4-7.  Before mediation, Defendants' Counsel prepared an in-depth exposure analysis that examined the time and compensation records of each Plaintiff, which Defendants' Counsel shared with Plaintiffs' Counsel.  Lassetter Dec. ¶¶ 4-5; Dunning Dec. ¶ 2.

Plaintiffs' Counsel examined this exposure analysis with a consulting expert.  Dunning Dec. ¶ 3.  The parties' had multiple telephone discussions regarding the exposure analysis, including the appropriate method for calculating alleged damages in this matter, prior to mediation and with the mediator's assistance.  Lassetter Dec. ¶ 6; Dunning Dec. ¶ 4.  Defendants' adjusted the exposure analysis based on points raised by Plaintiffs' counsel.  Lassetter Dec. ¶ 6; Dunning Dec. ¶ 4.

While the parties engaged in extensive discussions regarding the merits of Plaintiffs' and Defendants' defenses and the potential exposure in the case, Plaintiffs' did not make any settlement demand and Defendants' did not make any settlement offer before mediation.  Lassetter Dec. ¶ 7; Dunning Dec. ¶ 6.    At mediation, the parties separately negotiated settlement of the Plaintiffs' claims before broaching separately negotiating Plaintiffs' attorneys' fees and costs. Lassetter Dec. ¶ 8; Dunning Dec. ¶ 7; Declaration of John Phillips ("Phillips Dec."), ¶ 3.

The parties began mediation by negotiating the settlement amount for Plaintiffs.  Lassetter Dec. ¶ 8; Dunning Dec. ¶ 7; Declaration of John Phillips ("Phillips Dec."), ¶ 3.  Those discussions were guided by Defendants' Counsel's exposure analysis and advice Plaintiffs' Counsel received from their consulting expert regarding that analysis.  Dunning Dec. ¶ 8.    The parties agreed to

resolve the Plaintiffs' claims for a total of $50,000, which included a $5,000 service award for the Named Plaintiff. Lassetter Dec. ¶ 8; Dunning Dec. ¶ 7. The parties' Settlement Agreement incorporating these terms is attached to the Joint Index of Evidence filed with this Motion as Exhibit A. Based on Plaintiffs' time and compensation records, the $45,000 allocated to the 71 class members equates to approximately one hour of off-the-clock work per workweek for each of the Plaintiffs in the three-year statute of limitations and one and a half hours of off-the-clock work per workweek in the two-year statute of limitations. Dunning Dec. ¶ 8.

Once the parties had agreed upon a settlement amount for the Plaintiffs, the parties separately negotiated a resolution of Plaintiffs' claims for attorneys' fees and costs with the assistance of the mediator. Lassetter Dec. ¶ 9; Dunning Dec. ¶ 9; Phillips Dec. ¶ 4. The parties ultimately agreed to resolve Plaintiff's claims for attorneys' fees and costs for $150,000. Lassetter Dec. ¶ 9; Dunning Dec. ¶ 9. The parties further agreed that this amount would cover the costs of Plaintiffs' consulting expert and the settlement administration costs. Lassetter Dec. ¶ 9; Dunning Dec. ¶ 9. This amount represents a significant discount on Plaintiffs' attorneys' fees and costs. Dunning Dec. ¶ 9.

## III.     THE PARTIES' BONA FIDE DISPUTE OVER ALLEGED BACK WAGES.

### A.     Sprint's Timekeeping Procedures and Written Policies Prohibiting Off-The-Clock Work.

Defendants' liability defenses in this lawsuit are primarily predicated on the robust timekeeping policies and procedures that strictly prohibited Plaintiffs from working off-the-clock, required Plaintiffs to review and verify their time records each week, and required Plaintiffs to report any discrepancies with their time records.

Plaintiffs each worked in non-exempt, hourly positions in retail locations formally operated by Defendant Sprint/United Management Company ("Sprint") in Nebraska, Iowa and Minnesota.

Sprint utilized an electronic timekeeping system in each of these retail locations that employees utilized to clock-in when they began work and clock-out when their work ended.  *See* ECF No. 33, pp. 5-6.  All non-exempt retail employees were required to review their time records on a weekly basis and to certify that the time represented in their time records accurately represented all of their work hours for that workweek.  *See id.*   Beginning in January 2016, in addition to verifying the accuracy of their time records, non-exempt retail employees were required to answer questions affirming their understanding of Sprint's policy prohibiting off-the-clock work and verifying that they had not been otherwise instructed by anyone to work off-the-clock.  *See id.*

Sprint also maintained written policies explicitly requiring employees to report all time worked and strictly prohibiting off-the-clock work.  *See id.*, pp. 7-8.  Upon hire, each employee at a Sprint retail location was required to undergo comprehensive training regarding the timekeeping policies discussed above.  *See id.* pp, 9-10.    During this training, employees certified their understanding of these policies.  *See id.*

### B.    Plaintiffs' Off-The-Clock and Time-Shaving Allegations.

Plaintiffs claim that, despite Sprint's written policies and procedures prohibiting off-the-clock work, Defendants instituted *de facto* policies and practices that required Plaintiffs to work time off-the-clock and that encouraged management to shave their time records in order to avoid payment of overtime wages.  *See* ECF No. 1, ¶ 22; ECF No. 25, p. 3.  Named Plaintiff and the other representative plaintiffs who responded to Defendants' interrogatories each allege to have routinely worked over 40 hours in a workweek and that they were not compensated for varying amounts of time worked off-the-clock each week.  Dunning Dec. ¶ 13.

## IV.    SETTLEMENT OVERVIEW

After a thorough analysis of payroll, work hours and exposure analysis data produced by Defendants, Named Plaintiff and Plaintiffs' Counsel, in consultation with an expert, have concluded continued litigation is unnecessary as the settlement represents a significant recovery for each of the Plaintiffs.  Plaintiff, in consultation with his counsel, has concluded that this compromise is beneficial for Plaintiffs in light of the uncertainty of continued litigation, including the uncertainty that the FLSA collective would be finally certified for trial and the uncertainty that Plaintiffs would prevail at trial.

Defendants deny Plaintiff's claims in their entirety and deny any wrongdoing but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the settlement agreement are as follows:

- The settlement creates a common fund of $45,000 to resolve the claims of the 71 Plaintiffs.

- In exchange for their settlement shares from this common fund, each Plaintiff will release any wage and hour claims he or she may have against Defendants under the FLSA.

- Each Plaintiffs' pro rata share of this fund will be calculated based on each Plaintiffs' compensable workweeks within the applicable three year statute of limitations divided by the total number of compensable workweeks within the three year statute of limitations attributable to all of the Plaintiffs.  For example, if a Plaintiff is credited with 100 compensable workweeks and the value of payments for these compensable workweeks is 1% of the settlement fund, then that Plaintiff's settlement share would be 1% of the settlement fund.

- In recognition of the service contributions of Named Plaintiff, the Named Plaintiff seeks a service award in the amount of $5,000.00.

- In exchange for this service award, Named Plaintiff has agreed to a general release of claims that covers any claims Named Plaintiff may have against Defendants, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged

federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, and (vii) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs.

- As discussed in more detail above, the parties also separately negotiated and agreed that Defendants will pay Plaintiffs' Counsel a total of $150,000 to cover all attorneys' fees and costs, including the costs of settlement administration and Plaintiff's expert costs.

In light of the concerns the Court expressed in its December 14, 2020 Order regarding the scope of the proposed release, the parties have agreed that the scope of the Settling Plaintiffs' Release of Claims in Section 5 of the Settlement Agreement should be modified to the following:

Each Settling Plaintiff agrees on behalf of himself or herself, and his or her heirs, executors, administrators, successors and assigns to release, and hereby releases, to the fullest extent permitted by law, Sprint and each of the Released Parties from all claims arising under the federal Fair Labor Standards Act that were asserted in this Action or that could have been alleged in the Action up to and including the date of each Settling Plaintiff's negotiation of his or her Settlement Check (the "Released Claims").

## V.  LEGAL ARGUMENT

### A.  The Proposed Settlement Reflects a Fair and Equitable Resolution of a Bona Fide Dispute Between the Parties.

When analyzing a proposed stipulated judgment of claims asserted under the FLSA, the Court must determine whether the litigation involves a bona fide dispute and whether the proposed settlement is fair and equitable to all parties. *See Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

The instant case unquestionably involves a bona fide dispute over whether each of the Plaintiffs worked time off-the-clock that resulted in unpaid overtime wages. Defendants contend that their compensation practices complied with the FLSA and that Plaintiffs were compensated for all of their working time. Defendants further contend that Named Plaintiff is not similarly situated to the 70 other Plaintiffs and would oppose final certification of the FLSA collective for

10

trial, should litigation continue. Additionally, if the case were to proceed to trial, whether Defendants are liable to Plaintiffs for any overtime compensation would be contested issues for the Court or a jury to decide.

The settlement of Plaintiffs' claims was the product of arm's length negotiations by experienced counsel and, in Plaintiffs' case, a consulting expert following over two years of litigation. The settlement provides monetary relief to each Plaintiff that represents a fair and reasonable compromise of the disputed issues between the parties. The settlement also eliminates the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (citations omitted).

The settlement offers a payment to Plaintiffs now. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has

been held proper to take the bird in the hand instead of a prospective flock in the bush."); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation). The Parties respectfully request the FLSA Collective Action Settlement be approved.

### B.    The Requested Service Award is Reasonable.

Named Plaintiff seeks a service payment, or award, for his service contributions to the Class in the amount of $5,000.00. Through the course of this litigation, Named Plaintiff has provided factual information and otherwise assisted Plaintiffs' Counsel with prosecution of the litigation in service of the rest of the class.

Additionally, Named Plaintiff took a risk by not only joining the litigation, but by putting his name on it. By lending his name to employment litigation, he has risked damage of his reputation to current and future employers. His participation in this litigation will be documented on background checks for employment applications. There is always a risk that if an employer learns of his previous litigation, the employer would be less likely to hire Named Plaintiff.[1]

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit on behalf of the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643, 2009 U.S. Dist. LEXIS 74261, *7 (E.D. Mo. Aug. 21, 2009) (approving incentive award of $30,000; *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service

---

[1] *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266–67 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers.").

award to named plaintiff in tip pool/OT case settlement after two-and-a-half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation). In light of these considerations, the parties respectfully request that the service award be approved.

> C.    **The Court Need Not Approve The Parties' Resolution of Plaintiffs' Claims For Attorney Fees' and Costs.**

As discussed above, the parties have agreed to resolve Plaintiffs' claims attorneys' fees and costs for $150,000, inclusive of Plaintiff's expert costs and the costs of settlement administration. As the Eighth Circuit recently recognized in *Barbee v. Big River Steel, LLC*, a district court does not have authority to review parties' settlement of attorney fees "[w]hen the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim . . . " 927 F.3d 1024, 1027 (8th Cir. 2019). The Eighth Circuit further recognized that "the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *See id.*

The parties have presented evidence by way of sworn testimony from Plaintiffs' Counsel and the parties' mediator establishing that the parties separately negotiated a resolution of Plaintiffs' claim for attorney fees after the parties resolved Plaintiffs' FLSA claims. This settlement represents a compromised discount of the full amount fees Plaintiffs' Counsel accrued prosecuting this litigation and negotiating the settlement. Given that the parties separately negotiated the attorneys' fees amount, the Court need not review or approve the settlement of Plaintiffs' claim for attorneys' fees since per *Barbee*. *See id.*

As the Court noted in its December 14, 2020 Order, the opt-in consent form in this matter provided that "the attorneys may petition the court for an award of fees and costs to be paid by the Defendants on my behalf" and "that the fees retained by the attorney will be determined by the Court after a hearing[.]"  *See* ECF No. 124, p.5, n.2.  The consent form was issued on June 10, 2019 and accurately reflected the state of the law in the Eighth Circuit at the time.  *See* ECF No. 54.  The Eighth Circuit did not publish its decision in *Barbee*, which established that district courts do not have authority to review or approve separately negotiated attorneys' fees, until June 20, 2019.  *See* 927 F.3d at 1027.  Because *Barbee* altered the law in the Eighth Circuit on this issue, the Court need not adhere the language in the consent form that no longer accurately reflects the law.

## VI.    CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. The parties, therefore, respectfully request that the Court approve the parties' resolution of Plaintiffs' FLSA claims.

Dated:  January 14, 2021                      Respectfully submitted,


                                              *s/ John H. Lassetter*
                                              John H. Lassetter (MN Bar No. 0389009)
                                              (admitted *pro hac vice*)
                                              jlassetter@littler.com
                                              Alice D. Kirkland (MN Bar No. 0396554)
                                              (admitted *pro hac vice*)
                                              akirkland@littler.com
                                              LITTLER MENDELSON P.C.
                                              1300 IDS Center
                                              80 South 8th Street
                                              Minneapolis, MN  55402.2136
                                              Phone:  612.630.1000
                                              Fax:  612.630.9626

                                              ATTORNEYS FOR DEFENDANTS
                                              SPRINT CORPORATION AND
                                              SPRINT/UNITED MANAGEMENT
                                              COMPANY

Dated:  January 14, 2021


                                              *s/ Matthew G. Dunning*
                                              William B. Zastera (NE #14658)
                                              wzastera@vwattys.com
                                              Matthew G. Dunning (#20057)
                                              mdunning@vwattys.com
                                              VANDENACK WEAVER LLC
                                              17007 Marcy Street, Suite 3
                                              Omaha, NE 68118
                                              Phone:  402.504.1300
                                              Fax: 402.504.1935

                                              ATTORNEYS FOR PLAINTIFFS


4837-6578-9398.1 099449.1001